768 P.2d 655

**STATE of Arizona, Appellant,**

v.

**Clifford SINCLAIR, Appellee.**

**No. 1 CA–CR 11542.**

Court of Appeals of Arizona, Division 1, Department C.

April 7, 1988.

John Verkamp, Coconino Co. Atty., by Michael J. Hruby, Deputy Co. Atty., Flagstaff, for appellant State.

Michelle L. Ratner, Flagstaff, for appellee.

## OPINION

CORCORAN, Judge.

■ The state appeals from the trial court's suppression of evidence found after a warrantless automobile search. *See* A.R.S. § 13–4032(7). Because the suppression order was based on erroneous factual findings and an incorrect legal standard, we reverse.[1]

### 1. *Factual Background*

Appellee Clifford Sinclair (defendant) was indicted for possession of a prohibited weapon, a class 4 felony, in violation of A.R.S. § 13–3102, as well as two misdemeanor offenses—possession of a concealed weapon and possession of drug paraphernalia. The facts that follow are viewed in the light most favorable to sustaining the trial court's order, *see State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App. 1978), and are based on the evidence presented at the hearing on defendant's motion to suppress.[2]

Officer Pratt of the Flagstaff police department initially came in contact with defendant because he was seated in a parked station wagon with no front or rear license plates. As defendant and his female companion, Karen Prickett, exited the station wagon and approached the officer, he im-

---

1. We note that the state did not file a motion for reconsideration after the trial court suppressed the evidence. Although the state was not required to do so, "good cause" existed under rule 16.1(d), Arizona Rules of Criminal Procedure, to point out the factual errors and incorrect legal standard used by the trial court. If it had, this appeal might have been avoided. *Cf.* comment to Rule 22, Arizona Rules of Civil Appellate Procedure. We would encourage this as a better practice than bringing an immediate appeal pursuant to A.R.S. § 13–4032(7).

2. We note with disfavor that the state did not include references to the record in its opening brief. *See* rule 31.13(c)(1)(iii), Arizona Rules of Criminal Procedure. Because, however, defendant's brief contained adequate record references, and because this was not a voluminous record, we do not strike those portions of the brief not in compliance with the rules. *Cf. Flood Control Dist. v. Conlin*, 148 Ariz. 66, 712 P.2d 979 (App.1985).

mediately observed several knives on their belts. He requested them to remove their belts and place the knives on the back roof of the station wagon while he spoke to them. They both complied. While questioning Ms. Prickett, Officer Pratt determined her date of birth, that the station wagon was hers, that she had previously used the name of McDonald, and that she and defendant had recently been in Las Vegas, Nevada. Satisfying himself that the ownership papers of the vehicle were in order, Officer Pratt left the scene without issuing any citation. He had received no response from the police dispatcher after calling in information about Ms. Prickett for a check on the National Crime Information Center (NCIC) computer.

A few minutes later, the police dispatcher notified Officer Pratt that a felony arrest warrant had issued (a possible NCIC "hit") from Las Vegas, Nevada, under the name of McDonald, with a date of birth and a physical description that apparently matched the information Ms. Prickett had given the officer. Officer Pratt radioed for assistance from Officer Weems and both returned to the area in an attempt to locate Ms. Prickett.

The officers located Ms. Prickett's vehicle close to its prior location. Officer Pratt testified that he parked his patrol vehicle approximately 10 to 12 feet behind the suspect's station wagon and, using the public address system, called Ms. Prickett to exit the vehicle. Officer Pratt testified this was routine procedure for effecting a felony arrest. Ms. Prickett was in the driver's seat and got out of the vehicle. Officer Pratt explained to Ms. Prickett that he had been informed of a possible warrant for her arrest from Las Vegas and asked if she would accompany the officers to the Flagstaff police station to resolve the matter. She agreed to go with them and was placed in the back seat of the police vehicle. Officer Pratt testified that he told her she was not under arrest.

Defendant had remained in the front passenger seat of the station wagon. After speaking with Ms. Prickett, Officer Pratt then requested that defendant get out of the vehicle. He did so, meeting Officer Pratt at the front of the patrol vehicle. Defendant was still wearing the three knives on his belt that Officer Pratt had previously observed. Officer Pratt testified that he was nervous about the knives on defendant's belt and asked him to again remove them and place them on the roof of the police car. Defendant did so. While Officer Pratt talked to defendant, Officer Weems approached the station wagon and looked inside it to make sure no other weapons were in the vehicle. While looking through the windows, Officer Weems observed two or three knives with blades stuck into the dashboard, one or two knives on the front seat or the front floorboard, an electrical "stun gun" on the dashboard, and what appeared to be the butt of a shotgun or rifle protruding from underneath clothing directly behind the driver's seat. He called to Officer Pratt that a gun was in the car. Officer Weems then opened the car door and retrieved a sawed-off .410 gauge shotgun. Officer Pratt asked defendant whose gun it was; defendant responded that it was his and that he sometimes used it for hunting.

Officer Pratt testified that the barrel appeared cut or altered, with uneven edges. He also testified that it was obvious that the barrel of the weapon had been altered. A further search of the vehicle revealed shotgun shells, as well as nine .44 caliber magnum shells in an ammunition belt lying partially under the weapon. Shortly thereafter drug paraphernalia were also found in the vehicle. Defendant was then arrested for possession of a prohibited weapon and possession of drug paraphernalia.

### 2. *Defendant's Motion to Suppress*

Before trial, defendant moved to suppress the evidence because of an illegal search. Following an evidentiary hearing, at which Officers Pratt and Weems testified, the court suppressed the fruits of the search of the vehicle. Pursuant to a subsequent request by the state, the trial court made findings of fact. The court found that defendant and Ms. Prickett exited their station wagon without incident and were "peacefully seated in the squad car"

during the search. This finding is contrary to the evidence presented at the hearing, which indicated that defendant remained standing in front of the police car talking to Officer Pratt during the search, although Ms. Prickett was seated in the back seat of the police car. The trial court also found that Officer Weems approached defendant's vehicle, looked in and saw the shotgun while "the defendants were still in the squad car." Again, this finding was not supported by the record, which indicated that defendant remained at all times standing in front of the police vehicle. The court also stated: "The officers were in no danger. There were no exigent circumstances warranting entry into the defendants' car."

After the trial court granted the motion to suppress, the state moved to dismiss the complaint without prejudice and brought this appeal. *See State v. Million*, 120 Ariz. 10, 14–15, 583 P.2d 897, 901–02 (1978); A.R.S. § 13–4032(7).

### 3. *Application of Michigan v. Long*

The facts in this case are very similar to those discussed in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), which, unfortunately, neither party brought to the trial judge's attention. The state, however, has cited *Long* in support of its position on appeal. In addressing issues similar to those raised here, the Supreme Court in *Long* concluded that the balancing test required by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), clearly weighs in favor of allowing the police to conduct a weapons search of the passenger compartment of a motor vehicle stopped for a traffic offense, as long as the officers possess an articulable and objectively reasonable belief that the suspect is potentially dangerous. 463 U.S. at 1051, 103 S.Ct. at 3481–82. The Supreme Court recognized that investigative detentions involving suspects in motor vehicles are "especially fraught with danger to police officers." *Long*, 463 U.S. at 1047–48, 103 S.Ct. at 3480, *citing Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The Court also noted that suspects may injure police officers by virtue of their access to weapons, even when the suspects may not be personally armed. *Long*, 463 U.S. at 1048, 103 S.Ct. at 3480. The Court concluded:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.

*Long*, 463 U.S. at 1049, 103 S.Ct. at 3480–81.

The Court also addressed the conclusion by the Michigan Supreme Court that it was unreasonable for the officers to fear that Long could injure them because he was effectively "under their control" during the investigative stop and could not gain access to any weapons that might have been located in the automobile. 463 U.S. at 1051, 103 S.Ct. at 3481–82. The Court stated that this reasoning was mistaken in several respects. First, during any investigative detention, a suspect is always under the "control" of the officers in the sense that the suspect may be briefly detained against his or her will. Just as a *Terry* suspect on the street may, despite being under the control of the police, reach into clothing and retrieve a weapon, so too might a *Terry* suspect, driver or passenger, break away from the police and retrieve a weapon from the automobile. 463 U.S. at 1051, 103 S.Ct. at 3481–82. Second, if not placed under arrest, the suspect would probably be permitted to reenter the automobile and have immediate access to any weapons inside it. 463 U.S. at 1052, 103 S.Ct. at 3482. Finally, a *Terry* investigation involves police investigation "at close range" when officers are "particularly vulnerable," in part because a full custody arrest has not been effected and they must make immediate decisions on how to protect themselves and others from possible danger. 463 U.S. at 1052, 103 S.Ct. at 3482. "In such circumstances, we have not required that officers

adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." 463 U.S. at 1052, 103 S.Ct. at 3482. The Court also expressly rejected the view that the validity of a *Terry* search depends upon whether the weapon is possessed in accordance with state law. 463 U.S. at 1052 n. 16, 103 S.Ct. at 3482.

The state argues on appeal that under the standards set forth in *Michigan v. Long,* the trial court erred in suppressing the evidence obtained from the search of defendant's vehicle. Defendant responds that the state has not established either of the factors necessary to trigger the application of *Long.* First, defendant argues that the police could not have reasonably believed he was dangerous, apparently because he was being cooperative. Second, defendant argues that no evidence indicates that he could have gained immediate access to a weapon because the testimony showed he was approximately 12 to 20 feet from the driver's door and "was in police control." Third, defendant argues that justification for the seizure of the weapon under the rubric of "police safety" was a mere pretext. Defendant suggests that, if the officers truly believed they were in danger, they could have assisted each other in conducting his interview rather than having one of them look in and search the station wagon.

■ First, we note that the court's findings do not discuss the reasonableness of the officers' fear for their own safety but unequivocally find the officers were in no danger. The proper inquiry under *Long* is whether the officers reasonably believed they were in potential danger. Both defendant and his companion, a female whom the officers reasonably believed had a felony warrant for her arrest from Las Vegas, had been armed with knives when first approached by the officers. Furthermore, prior to searching the station wagon, Officer Weems had clearly observed knives stuck into the dashboard, a stun gun lying on the dashboard, and the butt of a rifle or shotgun protruding from underneath clothing in the rear seat of the vehicle. This presearch observation of several dangerous weapons in defendant's possession could have led to the officers' reasonable fear for their safety. Under these facts, no evidence supports the conclusion that the officers did not reasonably believe they were in potential danger.

■ Second, the trial court's factual finding that defendant was "peacefully seated in the squad car" while the search was conducted is contrary to the evidence. Defendant's contention that the officers could not reasonably believe they were in danger because he could not have gained access to a weapon was answered by the state in the following exchange with the court at the suppression hearing:

THE COURT: Neither of the suspects were close to the vehicle at the time the search was made. Doesn't that have some bearing?

A. It may have some bearing. I think it's not unreasonable for an officer to assume that one or both of the suspects could break away and then get back to the shelter and safety of the vehicle, where weapons were located. That is not an unreasonable suspicion. It's one-on-one basically, one suspect for each officer. I think that's a judgment call.

These circumstances are closely analogous to those articulated by the Supreme Court in *Long* and support an officer's reasonable fear of his safety.

Finally, the argument that the inspection of defendant's vehicle was a pretextual search is neither supported by the record nor was such a finding made by the trial court.

This court will not reverse a ruling on a motion to suppress unless it constitutes clear and manifest error. *See State v. Jarzab,* 123 Ariz. 308, 599 P.2d 761 (1979). Here, the trial court based its suppression order on erroneous factual findings and an incorrect legal standard. In the absence of a finding that the police officers lacked a reasonable belief that defendant was potentially dangerous, and because defendant could have gained immediate control of a weapon had he been permitted to return to his vehicle, we conclude that the trial judge

committed clear and manifest error in suppressing the evidence.

The order suppressing the fruits of the search is reversed, and this matter is remanded for proceedings consistent with this opinion.

SHELLEY and FIDEL, JJ., concur.