870 P.2d 1141

**STATE of Arizona, Appellee,**

v.

**Epitacio ROMERO, Appellant.**

**No. 1 CA–CR 91–1595.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 31, 1993.

Review Denied April 19, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

EHRLICH, Presiding Judge.

Epitacio Romero ("defendant") appeals from six convictions and sentences for aggravated assault. For the following reasons, we affirm the judgments.

## FACTS[1] AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on February 8, 1991, the victims in this case[2] were standing in the front yard of a home near the corner of 49th Avenue and Almeria in Phoenix. While talking, they noticed a pickup truck being driven by very slowly while its two occupants stared at the group in the yard. As the truck was driven around the corner at the end of the block, its headlights were turned off. Almost immediately thereafter, the victims heard and saw gunfire coming from that place. All of the people in the yard dropped to the ground and began crawling towards the house for cover. None of the victims was able to identify the person(s) who had fired at them; however, several of them were able to describe the truck that had just passed by and its two occupants.

The police were called and a description of the vehicle and two men was broadcast over the police radio. The truck was depicted as a flatbed pickup, either light gold or yellow, with large black tool boxes on the back, being driven in an easterly direction. Its occupants were depicted as two "Mexican males with long hair."

Phoenix Police Officer Joe Smelter was familiar with the location of the shooting and knew the neighborhood to be part of the Wedgewood gang's "turf." He drove east of the shooting site, into the area of the rival Hollywood gang. Within approximately five minutes of the radio call and within a mile to a mile and a half of the Almeria neighborhood, Officer Smelter came upon a truck matching the broadcast description parked along the east shoulder of 38th Avenue with the driver's-side door open. He also saw a car stopped next to the pickup and two Hispanic males with long hair standing outside the car, seemingly engaged in conversation with those in it. When the officer activated his emergency lights, the car sped off and the two Hispanic males walked quickly toward the truck. As the driver was about to get into the truck, Officer Smelter got half-way out of his car and drew his weapon but kept it hidden behind his open car door. The officer called to the two individuals and asked if he could speak to them. Both men began walking towards the officer. As the men approached, Officer Smelter raised his weapon and told them to lie down on the ground while he called for assistance, saying that there was a matter to be "cleared up."

Within a minute or two, Lt. Pina arrived on the scene and told both of the men on the ground that he was going to frisk them for weapons. The man later identified as the defendant told Lt. Pina that he didn't have any weapons on him but that he had a gun in the truck. The other man said that a .38 caliber handgun in the truck was his. As additional officers arrived, they recovered a loaded nine millimeter semi-automatic handgun from the driver's-side dashboard of the vehicle, along with two ammunition clips from the pocket on the driver's door. A loaded .38 caliber revolver was recovered from the passenger side of the dashboard. The defendant was handcuffed, placed in a patrol car and advised of his constitutional rights.

The defendant told Officer Kevin Sanchez that he knew nothing about the shooting, although he admitted to having fired his weapon in the air earlier in the evening at the corner of 40th Avenue and Palm. He also said that he had fired two boxes of ammunition at a shooting range and that he then had fired the last four rounds in the clip into the air at the intersection.

Approximately ten to fifteen minutes after the initial stop, two of the victims were taken from the shooting scene to the location of the stop. Both victims immediately identified the truck as the one driven past the house just prior to the shooting. Each also recognized the defendant as the driver of the truck.

Eleven spent nine millimeter bullet casings were recovered from the corner of 49th Avenue and Almeria. Ten of the casings later

---

1. The facts are viewed in the light most favorable to sustaining the jury's verdict. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

2. The names of the victims are not being given in the interests of protecting their privacy. *See* Ariz.Rev.Stat.Ann. § 13–4434.

were determined to have been fired from the weapon recovered on the driver's side of the truck.

The defendant was charged with seven counts of aggravated assault and one count of endangerment.

In addition to several pre-trial motions to suppress evidence, statements and identifications, the defendant filed a motion in limine to preclude the state from introducing evidence of his gang affiliation. The defendant argued that the state was without reliable evidence of his membership and that, in any event, such evidence was overly prejudicial. At a hearing on this issue, two Phoenix Police Gang Squad officers testified regarding two contacts with the defendant, one in approximately May 1985 and a second in February or March 1991, during each of which he indicated that he was a Hollywood gang member. There also was evidence that the shooting had taken place in Wedgewood gang territory, that some of the victims in this case were former or current Wedgewood gang members and that there was an ongoing rivalry between the two gangs.

The trial court denied the motion in limine, finding the evidence relevant and that its probative value outweighed any unfair prejudice to the defendant. The court suggested that a limiting instruction be read to the jury. Defense counsel thereafter requested a modified limiting instruction, which was read to the jury at the close of the case.

In addition to the testimony of the gang squad officers concerning the defendant's Hollywood connections, Officer Steve Orona testified at trial regarding the on-going rivalry between the Hollywood and Wedgewood gangs. A gang squad sergeant also testified regarding the meaning of graffiti in the area which indicated continuing antagonism. Moreover, although at trial all of the victims denied both current and former membership in any gang, defense counsel brought out that, on the night of the shooting, almost all of the victims had been identified as being either current or former Wedgewood members.

The jury found the defendant guilty of six counts of aggravated assault, class three dangerous felonies. The trial court found aggravating factors in support of a twelve-year prison term on one count and imposed presumptive 7.5–year terms on the remaining counts, each sentence to be served concurrently with the others. The defendant timely appealed.

## DISCUSSION

Two issues are presented on appeal: (1) whether the police had probable cause to arrest the defendant, the arrest alleged to have occurred when he was first forced at gunpoint to lie on the ground and then be handcuffed and put in a patrol car, and (2) whether the evidence of gang activities in general and the defendant's membership in the Hollywood gang specifically was admissible. We hold that the defendant's Fourth Amendment rights were not violated and that the evidence of his gang membership was both relevant with regard to his motive and intent in the shooting and not more unfairly prejudicial than probative.

### A. Alleged Violation of Fourth Amendment Rights

The defendant argues that Officer Smelter's actions did not constitute an investigative stop in accordance with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but was, from the outset, an arrest without probable cause. In this context, he claims that Officer Smelter acted with a degree of force in excess of that appropriate to an investigative detention and that the evidence collected as a result should have been suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The Fourth Amendment does not require that a police officer "simply shrug his shoulders and allow a crime to occur or a criminal to escape" even in the absence of sufficient information to establish probable cause. *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), quoted in *State v. Jarzab*, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980); *see Terry*, 392 U.S. at

22–24, 88 S.Ct. at 1880–81. If an officer has a reasonable suspicion, based upon specific and articulable facts, that a suspect is involved or wanted in connection with a crime, then a brief stop to investigate that suspicion in fact may be the best and most sensible response. *Terry*, 392 U.S. at 21–24, 88 S.Ct. at 1879–81; *see United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), discussed in *State v. Winegar*, 147 Ariz. 440, 446, 711 P.2d 579, 585 (1985); *Adams*, 407 U.S. at 146, 92 S.Ct. at 1118, discussed in *Jarzab*, 123 Ariz. at 311, 599 P.2d at 764. When, however, police action exceeds the bounds permitted by reasonable suspicion, a seizure becomes an arrest and must then be supported by probable cause, *Florida v. Royer*, 460 U.S. 491, 501–03, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983) (plurality opinion), but there is no "bright line rule" to apply when making this determination, only the approach of reason and common sense applied to the totality of the particular circumstances. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985); *Royer*, 460 U.S. at 506–07, 103 S.Ct. at 1329; *Winegar*, 147 Ariz. at 447 n. 5, 711 P.2d at 586 n. 5; *State v. Wiley*, 144 Ariz. 525, 531, 698 P.2d 1244, 1250 (1985), *overruled on other grounds*, *State v. Superior Court*, 157 Ariz. 541, 544, 760 P.2d 541, 544 (1988); *State v. Clevidence*, 153 Ariz. 295, 298, 736 P.2d 379, 382 (App. 1987).

■ The stop in this case was within the confines of the *Terry* standard. Officer Smelter knew that gunfire had just been witnessed in Wedgewood gang territory and that the vehicle involved had been driven east, the direction of the adjacent territory claimed by the rival Hollywood gang. Within a very short time and distance from the shooting scene, Officer Smelter spotted a vehicle and two men fitting the police broadcast description. Under these circumstances, the officer was justified in stopping the defendant for further investigation.

■ The manner in which Officer Smelter detained the defendant and seized the weapons was justified under the circumstances. The use of force does not transform a stop into an arrest if the situation explains an officer's fears for his personal safety. An officer may take reasonable measures to neutralize the risk of physical harm and determine whether the person detained is armed. *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881. Officer Smelter was aware that the men described in the radio broadcast were thought to have just committed a drive-by shooting with possible gang implications. His obvious purpose in drawing his weapon and ordering the men to the ground was to protect himself; alone, he was faced with two men whom he reasonably believed were armed and dangerous. He also was able to prevent flight or violence by these men while allowing the investigatory stop to proceed in an effort to quickly confirm or dispel his suspicion that the persons detained indeed were those responsible for the shooting. *Sharpe*, 470 U.S. at 686–88, 105 S.Ct. at 1575–76; *Michigan v. Long*, 463 U.S. 1032, 1047–49, 1051–52, 103 S.Ct. 3469, 3479–80, 3481–82, 77 L.Ed.2d 1201 (1983); *Adams*, 407 U.S. at 146, 92 S.Ct. at 1923; *State v. Sinclair*, 159 Ariz. 493, 496–97, 768 P.2d 655, 658–59 (App.1988); *Clevidence*, 153 Ariz. at 298, 736 P.2d at 382. Based upon the facts known to Officer Smelter at the time, it was reasonable for him to believe that he was in jeopardy; he therefore was authorized to take the steps reasonably necessary to protect his personal safety and maintain the status quo while waiting for additional officers to assist him. Police officers in situations such as the one presented here "must make immediate decisions on how to protect themselves and others from possible danger." *Sinclair*, 159 Ariz. at 496, 768 P.2d at 658, citing *Long*, 463 U.S. at 1052, 103 S.Ct. at 3482; *see Adams*, 407 U.S. at 146, 92 S.Ct. at 1923. They are not required "to be all-knowing, only to be prudent and reasonable." *State v. Vasquez*, 167 Ariz. 352, 355, 807 P.2d 520, 523 (1991).

■ In deciding the correctness of the detention, no one factor is determinative. The use of a weapon does not necessarily convert an investigation into an arrest. *E.g., United States v. Del Vizo*, 918 F.2d 821, 824–25 (9th Cir.1990), and cases cited; *United*

*States v. Buffington,* 815 F.2d 1292, 1300–01 (9th Cir.1987), and cases cited. In *Del Vizo,* as in *United States v. Robertson,* 833 F.2d 777, 781–82 (9th Cir.1987), there was no reason to believe that the person being detained was or remained dangerous, a critical factor distinguishing this case. *Buffington* involved a contrary situation. *Also compare United States v. Harrington,* 923 F.2d 1371, 1373 (9th Cir.1991) (gunpoint stop and order to lie on ground of suspect fitting description of armed bank robber who had shot another officer justified and not arrest), *cert. denied,* — U.S. —, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991); *United States v. Serna–Barreto,* 842 F.2d 965, 967–68 (7th Cir.1988) (reasonable to point gun at person detained when sole officer faced two suspected drug dealers seated in car at night); *United States v. Trullo,* 809 F.2d 108, 113 (1st Cir.1987) (permissible to draw gun during *Terry* stop when officer legitimately fearful based on suspicion of defendant's drug-dealing in high-crime neighborhood), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *United States v. Hardnett,* 804 F.2d 353, 357 (6th Cir.1986) (permissible to approach vehicle with weapon drawn when officer had reasonable suspicion occupants dangerous), *cert. denied,* 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987).[3]

■ When Lt. Pina arrived in response to Officer Smelter's call for assistance and began to frisk the men, the defendant and the other man volunteered that there were weapons in the vehicle; guns turned out to be in plain view on the dashboard. Even without these admissions, the search for and seizure of the weapons was proper under *Terry* due to the nature of such investigative detentions. *Hensley,* 469 U.S. at 235, 105 S.Ct. at 683; *Long,* 463 U.S. at 1049–50, 103 S.Ct. at 3480–81; *Sinclair,* 159 Ariz. at 496, 768 P.2d at 658. In such situations, the police may perform protective searches of vehicle passenger compartments when they have "an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Sinclair,* 159 Ariz. at 496, 768 P.2d at 658, citing *Long,* 463 U.S. at 1051, 103 S.Ct. at 3482; *see Clevidence,* 153 Ariz. at 298, 736 P.2d at 382.

■ The fact that the suspects are apparently cooperative need not lessen an officer's reasonable belief that the suspects are dangerous or undermine the appropriateness of an officer's actions. *Sinclair,* 159 Ariz. at 497, 768 P.2d at 659. Nor does the fact that an investigating officer may have the person "under his control" diminish the vulnerability of the officer in such situations when the individual still could bolt and retrieve any weapon(s) in the vehicle. *State v. Garcia,* 169 Ariz. 530, 532, 821 P.2d 191, 193 (App.1991); *Sinclair,* 159 Ariz. at 496, 768 P.2d at 658, citing *Long,* 463 U.S. at 1051–52, 103 S.Ct. at 3481–82.

■ Even the fact that a suspect is physically detained at the scene, whether by handcuffs and/or in a patrol car, does not in and of itself dictate that an arrest has occurred. *Del Vizo,* 918 F.2d at 824; *United States v. Ricardo D.,* 912 F.2d 337, 340–41 (9th Cir.1990); *Clevidence,* 153 Ariz. at 299, 736 P.2d at 383. However, by the time that the defendant in this case not only had been directed at gunpoint to lie prone, but was also frisked, handcuffed, placed in the back of a patrol car and read his constitutional rights, he was under arrest; his liberty had been absolutely curtailed. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1990). The requirement of probable cause thus attached, *Royer,* 460 U.S. at 501–03, 103 S.Ct. at 1326–27, probable cause conventionally being defined as existing when law enforcement officers have sufficient knowledge or information of facts and circumstances to warrant a belief by a reasonable person that an offense has

---

**3.** One United States Court of Appeals has listed six factors to consider in deciding whether the use of force is reasonable: (1) the number of police officers and vehicles; (2) the nature of the crime and the likelihood that the person being detained is armed; (3) the degree of the officer's articulable suspicions; (4) the need for immediate action; (5) the extent of the suspiciousness of the person's behavior and (6) the opportunity to conduct the stop in a less-threatening manner. *United States v. Seelye,* 815 F.2d 48, 50 (8th Cir.1987).

been or is being committed by the person to be or being arrested. *E.g., Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Wiley,* 144 Ariz. at 531, 698 P.2d at 1250.

In this case, probable cause to arrest the defendant existed.[4] Within a short distance and time of a reported shooting in a neighborhood of gang activity, two men in a truck, all fitting the description given by the victims, were stopped in the adjacent neighborhood of a known rival gang. Upon being told that they were going to be frisked, the men volunteered that there were weapons in the vehicle and guns in fact were recovered, one with additional ammunition clips.[5] This constituted sufficient evidence to justify the officers' reasonable suspicions ripening into probable cause to support an arrest.

The circumstances presented here support the finding that Officer Smelter initially employed an appropriate intermediate response under *Terry,* stopping the defendant in an effort to confirm or dispel the officer's reasonable suspicions of the defendant's involvement in the shooting. The force used to detain the defendant was no more than necessary to protect Officer Smelter's safety and maintain the situation. The seizure of the guns was justified, if not by the fact that the men volunteered the information, then as a protective vehicular search. Reasonable suspicion then ripened into probable cause for arrest in light of the information gathered by the police before and during the stop. The trial court was correct in its rulings.

### B.  Evidence of Gang Involvement

Initially, the defendant contends that the state failed to establish the gang affiliation of the victims in this case and also failed to show that he knew or believed that the vic-

tims were members of a rival gang. The defendant also claims that the evidence was only arguably relevant to motive and really served as an attack upon his character. Thus he argues that the prejudice far outweighed any probative value. We disagree and find no abuse of discretion by the trial court. *E.g., State v. Atwood,* 171 Ariz. 576, 642, 832 P.2d 593, 659 (1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

The record contradicts the defendant's contention that there was no evidence establishing the gang affiliations of the victims. To the contrary, his counsel adduced such evidence in cross-examining Officer Terry Rowe regarding his on-the-scene interviews with the victims. The jury was thereby informed that, during those interviews, most of the victims were identified as current or former Wedgewood gang members. It could choose to believe these prior statements or it could choose to believe the victims' trial testimony in which they all denied such affiliations; the question clearly was one for the jury to resolve. *State v. Lambright,* 138 Ariz. 63, 673 P.2d 1 (1983) (witness impeached at trial but credibility of witness for trier-of-fact and not appellate court), *cert. denied,* 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984), *overruled on other grounds, Hedlund v. Sheldon,* 173 Ariz. 143, 840 P.2d 1008 (1992).

The defendant's contention that the state was required to conclusively prove that he had actual knowledge of the victims' membership in a rival gang before evidence of his gang motive could be admitted is rebutted by the standards underlying relevancy determinations pursuant to Arizona Rule of Evidence 104(b). The United States Supreme Court discussed the standards governing a trial court's determination under the substantially identical Federal Rule of Evidence 104(b) in

---

4.  Since we hold that the investigatory detention was appropriate under the circumstances, we need not address whether there also may have been probable cause to have arrested the defendant at the time of the initial stop.

5.  We do not consider relevant the fact that the victims then were brought from the shooting scene to the site of the stop and then identified the truck and its occupants because what is germane is the information known to the police at the time of the arrest, not its subsequent verification. *Wiley,* 144 Ariz. at 531, 698 P.2d at 1250.

*Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988):

■ In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence.

■ In this case, the state presented evidence that the defendant was a Hollywood gang member, that the attack was in Wedgewood gang territory, that at least some of the victims were present or former Wedgewood gang members, and that there was an ongoing rivalry between these two gangs in bordering neighborhoods. This evidence was sufficient for the jury to determine that these facts were true and thus that it could find a motive for what otherwise would have been a random and unprovoked attack. *United States v. Abel,* 469 U.S. 45, 49, 105 S.Ct. 465, 467, 83 L.Ed.2d 450 (1984), discussed in *State v. Vickers,* 159 Ariz. 532, 537, 768 P.2d 1177, 1182 (1989) (evidence of membership in prison gang probative of bias), *cert. denied,* 497 U.S. 1033, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990); *see also People v. Mendez,* 221 Ill. App.3d 868, 164 Ill.Dec. 321, 322, 582 N.E.2d 1265, 1267 (1991) (defendant's membership in gang relevant to motive for drive-by shooting against rival gang); *People v. Contreras,* 144 Cal.App.3d 749, 192 Cal.Rptr. 810 (1983) (gang membership relevant to motive for assault and attempted robbery); *State v. Garcia,* 99 N.M. 771, 664 P.2d 969 (1983) (prison gang membership relevant to motive in stabbing inmate who had insulted gang), *cert. denied,* 462 U.S. 1112, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983); *State v. Ruof,* 296 N.C. 623, 252 S.E.2d 720 (1979) (defendant's association with motorcycle gang relevant to motive for shooting victim who had come into bar in gang's territory); *People v. Hairston,* 10 Ill.App.3d 678, 294 N.E.2d 748 (1973) (evidence of membership of defendant and victim in rival gangs relevant to drive-by shooting); John E. Theuman, Annotation, *Admissibility of Evidence of Accused's Membership in Gang,* 39 A.L.R.4th 775 (1985).

The trial court considered the *Huddleston* factors, adopted by our supreme court in *Atwood,* 171 Ariz. at 638, 832 P.2d at 655. First, the evidence was admitted for a proper purpose under Rule 404(b), to supply a motive for the crime. *Id.* Second, the defendant's gang affiliation was relevant to establish a relationship between his gang ties and the gang rivalry and the crime charged. *Id.* Third, the court properly weighed the probative value of the gang evidence against the likelihood of unfair prejudice and found that the prejudice was outweighed. *Id.* Last, the court suggested and the defendant agreed to a limiting instruction to caution the jury on the proper use of this evidence. *Id.*

The trial court is in the best position to balance the probative value of such evidence against its prejudicial effect and considerable discretion is vested in it to make this determination. *E.g., State v. Sparks,* 147 Ariz. 51, 56, 708 P.2d 732, 737 (1985). The record does not demonstrate an abuse of this discretion by the court in this case.

We have reviewed the record for fundamental error pursuant to Arizona Revised Statutes section 13–4035 and have found none. For the foregoing reasons, the convictions and sentences imposed are affirmed.

CONTRERAS and KLEINSCHMIDT, JJ., concur.