Sonja **KAJANDER**, Plaintiff—Appellant,

v.

**CITY OF PHOENIX**, Phoenix City Police Officer Codding, Badge # 5685, and Phoenix City Police Officer Stimac, Badge # 6808, Defendants—Appellees.

No. 05–15666.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 16, 2007.*

Filed April 10, 2007.

Howard J. Weinstein, Esq., Scottsdale, AZ, for Plaintiff–Appellant.

Kathleen L. Wieneke, Esq., Eileen Dennis Gilbride, Esq., Jones Skelton & Hochuli, PLC, for Defendants–Appellees.

Before: WALLACE, CUDAHY,** and McKEOWN, Circuit Judges.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** The Honorable Richard D. Cudahy, Senior United States Circuit Judge for the Seventh Circuit, is sitting by designation.

MEMORANDUM ***

The plaintiff, Sonja Kajander, was arrested for shoplifting, assault and two drug-related charges by the Phoenix Police Department on January 11, 2001. During her encounter with the police, her left arm was broken. She brought this lawsuit alleging constitutional violations pursuant to 42 U.S.C. § 1983 and various state tort claims against Fry's Marketplace, Inc., the City of Phoenix and two individual police officers, Officers Codding and Stimac. The plaintiff settled with the store, and the district court dismissed certain claims as to the City of Phoenix and Officers Codding and Stimac and granted summary judgment in their favor on the remaining claims. The plaintiff now appeals the district court's grant of summary judgment as to the false imprisonment and 42 U.S.C. § 1983 claims. We reverse the district court's grant of summary judgment as to the false imprisonment claim and affirm as to the 42 U.S.C. § 1983 claim.

On January 11, 2001, the plaintiff entered Fry's to return a bottle of vitamins. After being advised that she could only receive store credit for the vitamins, Kajander walked through the store and selected various items, placing a number of them in her pockets. She then proceeded to the cash register where she was informed by a customer service clerk that she could not use her store credit to purchase vodka, one of the items she had placed on the counter, as it was against store policy. Upset, Kajander turned to leave the store. Security guard Sean Phillips approached her and asked her to empty her pockets, at which point she removed several items. Phillips then announced that she was under arrest. At that point, Phillips alleges that Kajander became argumentative and proceeded to the exit. Kajander admits pushing Phillips away from her in order to avoid being handcuffed. Phillips handcuffed Kajander, escorted her to the security office and called police.

At approximately 9:23 p.m., Officers Streenstra and Warren from the Phoenix Police Department responded to a radio call about a "shoplifter fighting with store security at Fry's Marketplace at 850 E. Hatcher Rd." According to the police report, the officers arrived at 9:25 p.m. Officers Codding and Stimac, the named defendants in the present case, arrived at the store around the same time. The police officers proceeded to the security office where Kajander was sitting in a chair handcuffed. The decision was made to remove the handcuffs the security guard had placed on Kajander and replace them with police handcuffs.[1] According to the police, Kajander resisted by refusing to position her arms behind her back in such a way as to allow the handcuffs to be placed. Officers Codding and Stimac used an arm-bar technique, which involved Officer Codding's pulling Kajander's left arm behind her back. Officer Streenstra reported hearing three to four soft popping noises at that time, and Kajander yelled out that her arm had been broken.

The police then called the fire department. According to the fire department report, the call was placed at 9:30 p.m., five minutes after the police had arrived. Members of the fire department arrived at 9:33 p.m. The fire fighters examined Ka-

---

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Although not mentioned in the police report, Kajander claims that the police believed that she was attempting to rifle through her purse, which was attached to the handcuffs placed by the security guard.

jander, incorrectly determined that her arm was not broken and left the scene at 9:45 p.m.

According to Officer Streenstra's police report, after the fire department arrived, he interviewed four individuals—the security guard, Sean Phillips, and three witnesses. These witnesses reported seeing Kajander pushing Phillips and screaming that she was not shoplifting. At some point, Kajander was moved to the back seat of Officer Streenstra's police car. According to Officer Streenstra's report, Kajander was not questioned at any time, and "*Miranda* warnings were not given due to [Kajander's] uncooperativeness."

Officer Stimac searched Kajander's purse and found a "white crystalline substance in a baggie." At 10:22 p.m., Officer Streenstra tested the substance, and it tested positive for amphetamines. A records check was also conducted, and the police officers discovered two outstanding misdemeanor warrants for Kajander's arrest.

After being treated for a broken arm, Kajander was transported to jail where she was booked on one charge of possession of dangerous drugs, one count of assault, one count of shoplifting by removal and possession of drug paraphernalia. Kajander was not prosecuted for shoplifting or assault.

On January 8, 2002, the plaintiff filed this lawsuit against the City of Phoenix, Officers Codding and Stimac, and Fry's Marketplace, Inc. The plaintiff has settled with Fry's. The district court previously dismissed certain of the claims against the City of Phoenix and Officers Codding and Stimac and granted summary judgment in their favor on the remaining claims. Kajander appeals only the district court's grant of summary judgment as to Count 1, false imprisonment, and Count 5, violation of 42 U.S.C. § 1983.

We review a district court's grant of summary judgment de novo. *Ilioulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1093 (9th Cir.2006). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence in the light most favorable to the non-moving party, here the plaintiff, drawing all reasonable inferences. *Ilioulaokalani Coalition*, 464 F.3d at 1093–94.

### I. False Imprisonment

"The essential element necessary to constitute false imprisonment is unlawful detention." *Cullison v. City of Peoria*, 120 Ariz. 165, 584 P.2d 1156, 1160 (1978). An officer may lawfully detain a person for an investigatory stop if he has a "*reasonable, articulable suspicion* that a particular person has committed, was committing, or was about to commit a crime." *State v. Wiley*, 144 Ariz. 525, 698 P.2d 1244, 1249 (1985) (citing *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *overruled on other grounds by State v. Superior Court*, 157 Ariz. 541, 760 P.2d 541, 544 (1988). However, the detention must be brief. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."); *see also United States v. Chamberlin*, 644 F.2d 1262, 1266–67 (9th Cir. 1980) (holding that officers improperly detained and questioned a suspect for twenty minutes in their patrol car). And, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspi-

cion in a short period of time." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319. A suspect may also be lawfully detained by being arrested if the officer has probable cause for that arrest. "[A] police officer has probable cause for an arrest if he has reasonable grounds to believe that an offense is being or has been committed by the person arrested." *State v. Lawson*, 144 Ariz. 547, 698 P.2d 1266, 1272 (1985) (quotation marks omitted).

The defendants argue, as the district court concluded, that the officers had reasonable suspicion to detain the plaintiff as part of an investigatory stop which ripened into probable cause for her arrest. The district court found that the officers were informed by Fry's that the plaintiff had engaged in shoplifting and concluded that this report provided reasonable suspicion for detaining the plaintiff. The district court further concluded that the interviews conducted by Officer Streenstra provided probable cause to arrest the plaintiff.

The record does not clearly support the district court's determination that the arrest happened after the police interviewed the witnesses or that the investigatory detention was reasonable. Namely, the evidence in the record does not allow for a finding of when in the sequence of investigatory actions taken by the police the arrest actually occurred. Nor is it clear how long Kajander was placed in investigatory detention (both in the security office and later in the police car) before she was placed under arrest. Therefore, there is a genuine issue of material fact as to the timing of Kajander's arrest which precludes summary judgment.

The timing of the arrest is critical for two reasons. First, if the arrest happened too soon (e.g., at the time of re-handcuffing), the officers likely lacked probable cause to arrest the plaintiff at that time. The police officers arrived at the scene at 9:25 p.m. By 9:30 p.m. the fire department had already been called to examine the plaintiff's arm. Therefore, the re-handcuffing by Officers Stimac and Codding had to occur immediately upon their arrival. At that point, the officers were only acting on a dispatch report of a "shoplifter fighting with store security," or at least that is all that we can discern from the record. Acting solely on the information in this call, the officers did not have a "reasonable ground" to believe that Kajander had committed a crime, and therefore, the officers lacked probable cause to arrest her immediately upon their arrival. *Cf. Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1445 (9th Cir.1991) (declining to hold that police officers have probable cause to arrest an individual for shoplifting based solely on the account of a clerk, merchant or owner).

Second, if the arrest happened too late (e.g., after interviewing the witnesses), the plaintiff's detention could have become unreasonable and therefore unlawful. *See Royer*, 460 U.S. at 500, 103 S.Ct. 1319. From the police report, we know that the officers arrived at 9:25 p.m. Officer Streenstra began interviewing witnesses after the fire department arrived at 9:33 p.m. The police report does not indicate when he completed the interviews and ostensibly had probable cause to arrest the plaintiff for assault.[2] The report does ap-

---

**2.** As a factual matter, the district court clearly erred in its finding that the witness interviews supported probable cause to arrest Kajander for "shoplifting." Each witnesses interviewed merely said that he or she saw the scuffle between Kajander and the security guard, and Kajander's resistance to his efforts to detain her. The witnesses did *not* corroborate that Kajander "concealed items," as the district court found. However, the police report states that Kajander was also arrested for "assault." The witness interviews do corrob-

pear to indicate, however, that Officer Streenstra tested the substance found in Kajander's purse *after* he had concluded his interviews and that testing took place at 10:22 p.m. Assuming Kajander was not arrested until after Officer Streenstra interviewed the security guard and witnesses, Kajander was detained by the police for close to an hour, from 9:25 p.m. to shortly before 10:22 p.m., before her arrest. Assuming the arrest did not happen until approximately 10:22 p.m. and viewing the facts in the light most favorable to the plaintiff, the length of the detention, combined with the fact that the plaintiff was handcuffed and detained initially in a security office and later in the back of a police car, rendered it unreasonable and therefore unlawful.

Moreover, even if the officers did not intend to arrest Kajander at the time they handcuffed her, there is a genuine issue of material fact as to whether the handcuffing in this particular situation was unreasonable from the onset. *See Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995) (noting that a seizure can ripen into a "full-scale" arrest). Although it is true that handcuffing does not necessarily convert an investigation into an arrest, *see United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir.1990); *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir.1982); *State v. Romero*, 178 Ariz. 45, 870 P.2d 1141, 1146 (Ariz.Ct.App.1993); *State v. Clevidence*, 153 Ariz. 295, 736 P.2d 379, 382–83 (Ariz.Ct.App.1987), handcuffing during an investigatory stop is typically justified because of safety concerns. *Bautista*, 684 F.2d at 1289 (holding that police may take "adequate protective measures" to guard their own safety); *Romero*, 870 P.2d at 1145 (same). Here, viewing the facts in the light most favorable to the plaintiff, Kajander contends that she was

calmly sitting in the security office waiting for the police to arrive. Therefore, there is a genuine issue of material fact as to the reasonableness of the handcuffs and Kajander's detention from the onset. *See Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir.1996) (holding that forcing the plaintiffs from their car at gunpoint and handcuffing them was unwarranted as the officers had no reason to fear for their safety).

Because a genuine issue of material fact exists as to the timing of the arrest and the reasonableness of the plaintiff's detention from the onset, we reverse the district court's grant of summary judgment as to the false imprisonment claim.

### II.  42 U.S.C. § 1983

The § 1983 claim concerns only Officers Codding and Stimac, the officers who rehandcuffed the plaintiff upon their arrival. The district court held that Officers Codding and Stimac were entitled to qualified immunity, reasoning that Kajander failed to raise a genuine issue of fact that the arm bar and handcuffing techniques that the officers used were clearly established as constitutionally suspect at the time of the incident. *See Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We decline to reach the question of qualified immunity since the plaintiff failed to allege any Fourth Amendment violation as part of her 42 U.S.C. § 1983 claim in her complaint. The § 1983 count in her complaint reads in pertinent part: "The acts of Defendants Fry's Marketplace, Inc., Officer Codding and Officer Stimac subjected Plaintiff to a denial of her due process and equal protection rights under the United States Constitution and the Arizona Constitution." Therefore, we affirm the district court's

---

orate the "assault" theory, and thus, may        provide probable cause for arrest for assault.

grant of the defendants' motion for summary judgment as to the 42 U.S.C. § 1983 claim.

AFFIRMED IN PART, REVERSED IN PART.

WALLACE, Circuit Judge, concurring:

I concur in the result of the reversal of the false imprisonment claim and fully concur in the affirmance of the 42 U.S.C. § 1983 claim.