925 P.2d 1347

**STATE of Arizona, Appellee,**

v.

**Timothy Scott BLACKMORE, Appellant.**

**No. CR–95–0371–PR.**

Supreme Court of Arizona,
En Banc.

Aug. 29, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, J. Randall Jue, Assistant Attorney General, Phoenix, for the State.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for Appellee.

## OPINION

CORCORAN, Justice (Retired).

On November 23, 1993, Timothy Scott Blackmore (defendant) was convicted of possession of dangerous drugs, a class 4 felony. He was sentenced to a three-year suspended sentence, probation, 360 hours of community service, and a $1,400.00 fine, plus other fees and assessments.

Before trial, defendant moved to suppress all physical evidence and statements he had made to the police on the ground that his arrest was illegal under the Fourth Amendment of the United States Constitution. The trial court denied the motion. In a divided opinion, the court of appeals reversed. *State v. Blackmore*, 183 Ariz. 473, 480, 904 P.2d 1297, 1304 (App.1995). We now vacate the court of appeals' opinion. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3), and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

We restrict our review to consideration of the facts the trial court heard at the suppression hearing. *State v. Flower*, 161 Ariz. 283, 286 n. 1, 778 P.2d 1179, 1182 n. 1 (1989). At dusk on April 19, 1992, Phoenix police officer Benjamin Wetzel responded to a burglary call in west Phoenix. The burglary victims did not see the perpetrator but heard someone leave their residence through an open window. The window led to an adjacent alley where the victims reported seeing an orange vehicle. Officer Wetzel went alone into the alley and observed defendant squatting behind a dumpster. Officer Wetzel drew his gun and ordered defendant to lie on the ground, then handcuffed him, helped him to his feet, walked him to the patrol car, and searched him. When Officer Long arrived as backup, Officer Wetzel informed defendant that he was being held in investigative detention for the burglary and asked for identification. Defendant responded that his wallet was in a "fanny pack" inside his car. Defendant then consented to Wetzel's request to enter the car and get the identification. After defendant consented to the search, Officer Wetzel put him into the patrol car. Officer Long entered defendant's car, removed the "fanny pack," and opened it. An open pill bottle fell out of the pack. Inside the pill bottle, Officer Long saw a small plastic bag containing a white powdery substance, which later tested positive for methamphetamine. He removed the bag, and another plastic bag fell out containing a green leafy substance he believed to be marijuana. Officer Long also found a small pipe in the pack.

The officers then arrested defendant and read him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant stated that he was in the alley looking for PVC (plastic)

pipe. He also admitted that he had "some pot and some crushed white cross" in his car. The police did not find any evidence in the alley linking defendant to the burglary. Defendant was charged with possession of methamphetamine.

Defendant moved before trial to suppress all physical evidence and all of his statements to the police. Judge Jeffrey A. Hotham, who presided over the suppression hearing, denied the motion, finding that: (1) the initial stop and detention were appropriate; (2) defendant voluntarily consented to entry into his car and retrieval of his "fanny pack" for identification; (3) the police did not exceed the scope of defendant's consent; (4) Officer Long observed the methamphetamine in plain view; and (5) the methamphetamine generated probable cause to continue to search for drugs and seize the drugs that Officer Long discovered.

The majority of the court of appeals concluded that the trial court had erred in denying defendant's motion to suppress and that the error was not harmless. 183 Ariz. at 480, 904 P.2d at 1304. The majority held that defendant's detention was a de facto arrest and that the arrest was unlawful because the police lacked probable cause. *Blackmore,* 183 Ariz. at 476–78, 904 P.2d at 1300–02. The court therefore remanded the case to the trial court for reversal of defendant's conviction. *Blackmore,* 183 Ariz. at 480, 904 P.2d at 1304.

In his dissent, Judge Noyes argued that the facts of the case "raise[d] a close question about whether the officer's exercise of what he thought were reasonable safety precautions violated [defendant's] right to be free from an unreasonable search and seizure" and that, viewed in the light most favorable to sustaining the trial court, there was no manifest error in the trial court's denial of defendant's motion to suppress. *Blackmore,* 183 Ariz. at 480, 904 P.2d at 1304 (Noyes, J., dissenting). Judge Noyes also reasoned that this case resembles *State v. Aguirre,* 130 Ariz. 54, 633 P.2d 1047 (App.1981) (finding that a burglary suspect who was frisked, searched, handcuffed, and placed in a patrol car after he was found hiding had been detained but not arrested). *Blackmore,* 183

Ariz. at 481, 904 P.2d at 1305 (Noyes, J., dissenting). In summary, Judge Noyes stated that "[a]lthough in hindsight it appears that Officer Wetzel could have safely walked up and shaken hands with [defendant], that hindsight obviously has no bearing on whether the officer's actions in securing [defendant] before talking with him were reasonable and therefore lawful." 183 Ariz. at 481, 904 P.2d at 1305 (Noyes, J., dissenting).

We granted review on the following 3 issues:

1. Did the seizure of defendant before his formal arrest exceed the bounds of an investigatory stop?

2. Did the officer violate defendant's right to be free from an unreasonable search and seizure by drawing a gun, handcuffing defendant, and placing him in a patrol car?

3. Even if the seizure of defendant amounted to an illegal arrest, did it taint defendant's consent to search his fanny pack for identification?

## STANDARD OF REVIEW

 Whether an illegal arrest occurred is a mixed question of fact and law. We give great deference to the trial court's factual determination, but we review the ultimate question de novo. *State v. Winegar,* 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985); *see also Ornelas v. United States,* — U.S. —, —, 116 S.Ct. 1657, 1658, 134 L.Ed.2d 911 (1996) (holding that "the ultimate questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed de novo.").

## DISCUSSION

We adopt and expound upon the dissent's analysis in the court of appeals' opinion. *State v. Blackmore,* 183 Ariz. 473, 480–81, 904 P.2d 1297, 1304–05 (App.1995) (Noyes, J., dissenting).

## I. SEIZURE BEFORE FORMAL ARREST

 Under *Terry v. Ohio,* a police officer with a reasonable and articulable suspi-

cion that a person is involved in criminal activity may make a limited investigatory stop. 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1879–80. The standard for determining the validity of a *Terry* stop is whether "a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883. In *Adams v. Williams,* the Supreme Court explained that:

A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

█ In this case, defendant does not contest the validity of the initial detention but argues that the detention exceeded the permissible scope of a *Terry* stop and became an illegal de facto arrest. The majority of the court of appeals agreed, reasoning that handcuffing defendant, placing him in the patrol car, and telling him that he was under investigatory detention combined to create a situation that would convince a reasonable person that he or she was not free to leave. *Blackmore,* 183 Ariz. at 478, 904 P.2d at 1302.

In contrast, the dissent concluded that the officer's conduct was reasonable:

When the officer went by himself into that alley it was after 7:30 p.m. in April and it was getting dark. The officer knew that, moments ago, the victims had seen a burglar leave their house for the alley and they had seen a parked car in the alley. The alley was U-shaped; the victims' house backed onto one leg of the U and the parked car was in the other leg; a residential cul-de-sac formed the middle of the U. Although some distance and several houses stood between the victims' house and the parked car, the fact remains that the officer had good reason to suspect that a burglar and his parked car were in the alley. The only person the officer saw in the alley was defendant, hiding behind a dumpster near the parked car. There was no probable cause to arrest defendant for burglary at this point, but there was compelling reason to conduct an investigative detention, and to be concerned that defendant might be armed or dangerous or not alone.

183 Ariz. at 480, 904 P.2d at 1304 (Noyes, J., dissenting).

█ We agree. Factors in determining the propriety of an investigative stop include, among others: (1) the proximity between the location of the crime and the site of the stop, *State v. Gastelo,* 111 Ariz. 459, 460, 532 P.2d 521, 522 (1975); (2) the amount of time between the crime and the stop, *Gastelo,* 111 Ariz. at 460, 532 P.2d at 522; and (3) the duration of the stop, *United States v. Huberts,* 637 F.2d 630, 636 (9th Cir.1980). Here, Officer Wetzel was the first officer to respond to the burglary call. Within minutes, he arrived in the alley located behind the victims' house. Defendant was detained for only a few minutes while the police conducted their investigation.

We also concur with the court of appeals' dissenting judge's conclusion that this case is similar to *State v. Aguirre,* 130 Ariz. 54, 633 P.2d 1047 (App.1981). In *Aguirre,* Division Two of the Court of Appeals held that the defendant was not under de facto arrest where, after hiding from the police, he was handcuffed and detained until the officer could get more information. 130 Ariz. at 56, 633 P.2d at 1049. Under the facts of that case, the *Aguirre* court stated that the reasons which supported the initial detention continued to apply while the officer sought more information. 130 Ariz. at 56, 633 P.2d at 1049. As in *Aguirre,* the circumstances of this case that made defendant's initial detention reasonable continued until Officer Wetzel obtained defendant's consent to search for his identification. Defendant consented to Officer Wetzel's request to search for identification before he was placed in the patrol car. His consent, therefore, was not the fruit of the seizure; the seizure was the fruit of the consent.

In addition, Officer Wetzel detained defendant in a manner sufficient to protect the officer's safety until he had concluded his initial investigation. We disagree with the court of appeals' majority opinion, with which the dissent to this opinion apparently agrees, that defendant's "subsequent cooperation should have dispelled any reasonable concerns that he posed a flight risk." *Blackmore*, 183 Ariz. at 478, 904 P.2d at 1302. Defendant's vehicle was the only one in the alley, and it was parked a short distance from the site of the detention. The burglary victims had not seen the perpetrator and therefore did not know if he or she was armed. As a result, Officer Wetzel could not know whether defendant, whom he reasonably suspected of committing the burglary, was armed. Because the officer was alone in an alley at dusk with a suspect who appeared to be hiding and whose vehicle was parked a short distance away, it was reasonably prudent to detain defendant as if he were armed and dangerous. *See Michigan v. Long*, 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983) ("[W]e have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter."), quoted in *State v. Sinclair*, 159 Ariz. 493, 496–97, 768 P.2d 655, 658–59 (App.1988); *see also State v. Romero*, 178 Ariz. 45, 50, 870 P.2d 1141, 1146 (App.1993) ("[T]he fact that an investigating officer may have the person 'under his control' [does not] diminish the vulnerability of the officer in such situations when the individual still could bolt and retrieve any weapon(s) in the vehicle."); *People v. Allen*, 73 N.Y.2d 378, 540 N.Y.S.2d 971, 972, 538 N.E.2d 323, 324 (1989) ("[Police officers] must be permitted to take reasonable measures to assure their safety and they should not be expected 'to await the glint of steel' before doing so.") (citation omitted). Officer Wetzel's use of force was reasonable in order to preserve his own safety and to prevent defendant from fleeing. We therefore hold that the investigatory stop was not a de facto arrest, and the trial court did not abuse its discretion in denying defendant's motion to suppress.

## II. FOURTH AMENDMENT RIGHTS

■ For the reasons expressed in the dissent to the court of appeals' opinion, quoted above, we hold that when Officer Wetzel drew his gun and handcuffed defendant, he had a reasonable and articulable suspicion that defendant had committed the burglary. Such suspicion continued when he placed defendant in the patrol car. When Officer Long searched for defendant's identification, he discovered the evidence that gave the officers probable cause to arrest defendant. Defendant's detention was therefore not an unreasonable search and seizure and did not violate his Fourth Amendment rights. Defendant's arrest following the detention was based on probable cause and was lawful.

## III. TAINT

■ We have held that defendant was not under de facto arrest and that his detention did not violate his Fourth Amendment rights. Because the evidence admitted at trial against defendant was not obtained illegally, we need not reach the issue whether defendant's detention tainted his consent to search his fanny pack for identification. But even if we were to assume, *arguendo*, that petitioner was under de facto arrest without probable cause when he was handcuffed and placed in the police car, any taint from the illegality of the arrest was purged. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Therefore, his consent was effective, and the search provided probable cause for his arrest.

■ *Brown v. Illinois* enumerated four factors helpful in determining whether the taint from an illegal arrest is purged: the voluntariness of the statements; the temporal proximity between arrest and the statements; the presence of intervening circumstances; and, particularly, the purpose and flagrancy of official misconduct. 422 U.S. at 603–04, 95 S.Ct. at 2261–62; *State v. Reffitt*, 145 Ariz. 452, 458, 702 P.2d 681, 687 (1985); *State v. Monge*, 173 Ariz. 279, 842 P.2d 1292 (1992) (applying *Brown/Reffitt* analysis to the effectiveness of consent following arrest).

In this case, defendant voluntarily consented to a search of his fanny pack. Weighing in favor of exclusion is the consent's temporal proximity to the arrest and the lack of intervening circumstances; defendant consented to the search and made his incriminating statements immediately after his detention. However, dispositive in this case is the fact that the purpose and flagrancy of the official misconduct is *de minimis.* Officer Wetzel acted out of concern for his safety. There is no suggestion that he was attempting to exploit an illegal arrest to obtain incriminating evidence. The taint of any illegality was thus purged.

## DISPOSITION

We vacate the court of appeals' opinion and affirm defendant's conviction.

MOELLER and MARTONE, JJ., concur.

ZLAKET, Vice Chief Justice, dissenting.

I agree with the majority that the police officer was justified in stopping defendant to conduct an "investigative detention," but that is where we part company. If being ordered at gunpoint to lie face-down in the dirt, placed in handcuffs, picked up and moved, searched while sprawled over the hood of a police car, and then escorted to the back seat of that vehicle is *not* enough to cause "a reasonable person, innocent of any crime, [to] reasonably believe that he was being arrested," *State v. Winegar,* 147 Ariz. 440, 448, 711 P.2d 579, 587 (1985), I cannot imagine what would be. Thus, I concur in the court of appeals' opinion and believe it should not be vacated.

The majority is correct that whether defendant was illegally arrested involves a mixed question of law and fact. An appellate court must give deference to the trial court on factual issues because the "trial judge has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and . . . can better assess the impact of what occurs before him." *Id.* at 445, 711 P.2d at 584, *citing State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983); *see, e.g., U.S. v. Mitchell,* 812 F.2d 1250, 1253 (9th Cir.1987) (court's

findings of fact in suppression hearing reviewed for clear error). Conclusions of law, however, are not accorded such weight. *See Ornelas v. United States,* —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see, e.g., U.S. v. Ricardo D.,* 912 F.2d 337, 339 (9th Cir.1990) (whether seizure of a defendant prior to formal arrest exceeded the bounds of a *Terry* stop is reviewed *de novo* ). Thus, after considering the factual findings and inferences to be drawn from them, we must "look over the trial court's shoulder in determining whether the arrest issue was correctly decided." *Winegar,* 147 Ariz. at 445, 711 P.2d at 584.

Defendant does not disagree that Officer Wetzel was justified in detaining him for investigative purposes under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but complains that the officer exceeded the reasonableness of the initial stop and illegally arrested him. He correctly argues that whether a valid *Terry* stop becomes a *de facto* arrest depends on all of the surrounding circumstances. *See Florida v. Royer,* 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *U.S. v. Baron,* 860 F.2d 911, 914 (9th Cir.1988); *Winegar,* 147 Ariz. at 448, 711 P.2d at 587. "The scope [of the detention] must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Terry,* 392 U.S. at 19, 88 S.Ct. at 1878 (internal quote omitted). The purpose of this detention should have been to determine defendant's identity and reason for being in the alley. *See U.S. v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (reasonable suspicion of criminal activity warrants temporary seizure for questioning limited to purpose of stop). Officer Wetzel's conduct, however, far exceeded this narrow objective.

The factual recitation of the court of appeals is extremely thorough and needs no repetition. *State v. Blackmore,* 183 Ariz. 473, 475–76, 904 P.2d 1297, 1299–1300 (App. 1995). Several points, however, deserve special emphasis. When the burglary victims returned home, they heard someone leaving through an open window. A VCR was missing. The victims got into their car and drove around the block. All they saw was an orange vehicle in an alley connected to the one in which the burglar presumably fled.

They subsequently called the police. Officer Wetzel, who had less than one year's experience, was the first to respond. He entered the alley with his gun drawn, aimed the weapon at defendant, and ordered him to the ground. The officer would later testify that *nothing* linked defendant or the orange car to the burglary other than proximity to the crime scene.

Having first ensured his "own safety" by positioning defendant so he could "see his hands" at all times, and having received total cooperation in return, Officer Wetzel did nothing to ascertain defendant's identity or purpose for being in the alley. The "suspect" was not asked his name, what he was doing, whether he saw anyone else, or if the orange car was his. The officer also failed to perform a routine computer check of the vehicle's license plates. *See Royer*, 460 U.S. at 500, 103 S.Ct. at 1325–26 ("[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."). Instead, defendant was handcuffed, taken from the place of his seizure to the patrol car, searched over the hood of that vehicle, led to the back, and placed inside.

The majority relies on *State v. Aguirre*, 130 Ariz. 54, 633 P.2d 1047 (App.1981), in holding the officer's actions reasonable. In that case, however, the suspect was seen "sliding under a truck" near the scene of the crime, and the "officer had to coax [the suspect] out from under the truck which showed his lack of cooperation." *Id.* at 56, 633 P.2d at 1049. The officer knew nothing of the crime that had occurred, other than that it was believed to be a burglary. He was aware, however, that the suspect was a convicted felon. The court found a pat down for weapons proper under *Terry.* It also held that handcuffing and placing the suspect in a patrol car was reasonable "until the officer could get more information about the reported crime." One policeman had to stay with the suspect "who had acted evasively and hidden earlier. The officers had reason to believe appellant might try to escape." *Id.*

Here, in contrast, Officer Wetzel knew everything there was to know about the reported crime. Before approaching defendant, he was advised that the victims heard someone exit their home into an adjacent alley and that a VCR was missing. Wetzel admitted he did not take defendant back to the house because he knew the "victims didn't see ... the suspect." Defendant never attempted to hide or escape. He was fully cooperative and immediately immobilized. Furthermore, additional officers arrived on the scene within minutes of the initial encounter. Thus, after a very short time, there was no objectively reasonable basis upon which to fear that Blackmore might be armed, dangerous, or a flight risk. Police action must be justified by specific and articulable facts. Except as enhanced by generous amounts of supposition, the majority points to none. *Cf. Allen v. City of Los Angeles*, 66 F.3d 1052 (9th Cir. 1995) (forcing occupant at gunpoint to exit car and lie on ground, handcuffing, frisking, placing him in patrol car, and questioning him was reasonable and justified where stop occurred in high-crime area, at night, after lengthy high-speed chase, another occupant was non-compliant and combative, and officers could not rule out possibility car was stolen).

Officer Wetzel apparently never intended a limited inquiry into defendant's identity and purpose in the alley; otherwise, he would have immediately pursued it. He admitted defendant was never free to leave—that is why he was placed in handcuffs and led to the police car. This was not a limited intrusion; it was, quite plainly, an arrest.

In reviewing the facts and circumstances of each case, we must be mindful of the narrow scope of the *Terry* exception—an exception based on a brief, street encounter between police and a suspect. To do otherwise would be to risk allowing the 'exception ... to swallow the general rule that Fourth Amendment seizures are reasonable only if based on probable cause.' *Ricardo D.*, 912 F.2d at 340, *citing Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979).

I also agree with the court of appeals that defendant's "consent," given under such circumstances, was likely the product of his illegal arrest. I simply cannot find any evidence in the record purging the impermissible taint. *See State v. Monge*, 173 Ariz. 279, 842 P.2d 1292 (1992). The majority admits that 2 of the 4 factors enumerated in *Brown*

*v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), temporal proximity and lack of intervening circumstances, weigh "in favor of exclusion." *Ante* at 635, 925 P.2d at 1352. As to the third, it merely announces the sweeping conclusion that consent was "voluntarily" given, ignoring completely the frightening, demeaning, and oppressive circumstances in which defendant found himself through no fault or misconduct of ·his own. He was a captive, together with all that that implies. For the majority, however, the one "dispositive" fact that makes everything right is the officer's purely subjective claim that he was acting "out of concern for his own safety." *Ante* at 635, 925 P.2d at 1352. As previously shown, I find little evidentiary support for this assertion, nor do I believe it alone would be legally sufficient to render this incident harmless. The officer had at best a generalized, non-specific concern about his well-being. While I share the majority's regard for the safety of law enforcement personnel, I cannot agree that defendant's treatment was proper in the context of this *Terry* stop.

Therefore, I respectfully dissent.

FELDMAN, C.J., concurs.