IN THE COURT OF APPEALS
STATE OF ARIZONA



FILED BY CLERK

JUN 17 2005

COURT OF APPEALS
DIVISION TWO

|   |   |   |
|---|---|---|
| | ) | 2 CA-JV 2004-0090 |
| | ) | DEPARTMENT A |
| | ) | |
| IN RE ILONO H. | ) | O P I N I O N |
| | ) | |
| | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 16988001

Honorable Stephen M. Rubin, Judge Pro Tempore

REVERSED AND REMANDED

---

Barbara LaWall, Pima County Attorney
  By Peter Hochuli                                                    Tucson
                                                      Attorneys for State

Robert J. Hooker, Pima County Public Defender
  By Paul Holbrook                                                   Tucson
                                                      Attorneys for Minor

---

E C K E R S T R O M, Judge.

¶1        Ilono H., born April 28, 1988, appeals from the juvenile court's denial of his motion to suppress evidence; from his adjudication as a delinquent for possessing or consuming alcohol, a class one misdemeanor, and possession of a narcotic drug for sale, a class two felony; and from the disposition order placing him on probation for twelve months. Because we agree with Ilono that the juvenile court erred in denying his motion to suppress, we reverse his adjudication and remand this case for the reasons set forth below.

¶2        We review only the evidence presented at the suppression hearing, *State v. Blackmore*, 186 Ariz. 630, 631, 925 P.2d 1347, 1348 (1996), and we view it in the light most favorable to upholding the juvenile court's factual findings. *State v. Hackman*, 189 Ariz. 505, 508-09, 943 P.2d 865, 868-69 (App. 1997).  At 6:45 p.m. on June 23, 2004, Tucson Police Officers Pegnato and Garcia were patrolling in their vehicle near a park on the south side of Tucson in an area of known drug and gang activity when they saw a group of five individuals, including Ilono, sitting underneath a ramada that was marked with gang graffiti. Officer Pegnato testified that the "[m]ajority of [the individuals] were all dressed in red[. W]e made contact with them, approached them on foot, saw the baggy clothing and at that time conducted a frisk." Ilono was one of the individuals wearing red, baggy clothing. Pegnato testified that such clothing is often associated with gang members who frequently carry weapons. During the pat-down search, she discovered that Ilono had a forty-ounce bottle of beer under his clothes, and she arrested him for possessing alcohol. Officer Garcia then conducted a search incident to the arrest and found a small plastic bag in Ilono's pants

pocket that was later determined to contain cocaine. Ilono told the officers that the cocaine belonged to him and that, although he did not use cocaine, he sold it.[1]

¶3 Ilono argued below that, because Officer Pegnato was unable to articulate a reason for believing that he had been involved in criminal activity or that he had been armed, the initial stop and pat-down search were unconstitutional under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The juvenile court denied Ilono's motion to suppress the cocaine, finding that "the officer [had] acted appropriately under the circumstances[,] . . . that she articulated well her concerns when approaching the group[,] . . . [and that] they rise to the level of permitting a pat-down search." Ilono has timely appealed that ruling. Although we view the evidence presented at the suppression hearing in the light most favorable to upholding any factual findings, the question of whether the police had reasonable suspicion to conduct an investigatory stop is a mixed question of law and fact that we review *de novo*. *See State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996).

¶4 Under *Terry* and its progeny, an officer may conduct an investigatory stop or detention only if the officer has "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1, 10 (1989), *quoting Terry*, 392 U.S. at 30, 88 S. Ct. at 1884, 20

---

[1]Ilono made this statement after he was advised of his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

L. Ed. 2d at 911, or if the person stopped is reasonably suspected of having committed a crime. *See United States v. Hensley*, 469 U.S. 221, 229, 105 S. Ct. 675, 680, 83 L. Ed. 2d 604, 612 (1985); *State v. Winegar*, 147 Ariz. 440, 446, 711 P.2d 579, 585 (1985). Then, if the officer "has reason to believe that the suspect is armed and dangerous," the officer may conduct a limited search for weapons. *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612, 617 (1972); *see also Terry*, 392 U.S. at 30, 88 S. Ct. at 1884-85, 20 L. Ed. 2d at 911; *Winegar*, 147 Ariz. at 446, 771 P.2d at 585; *In re Steven O.*, 188 Ariz. 28, 31, 932 P.2d 293, 296 (App. 1997).

¶5 The state presented no evidence that would support an officer's reasonable suspicion that any of the individuals under the ramada, including Ilono, was engaged in any criminal activity. In fact, Officer Pegnato acknowledged that she had initially approached the group simply because they were wearing clothing associated with gangs in a park frequented by gang members. Pegnato also noted in other testimony that one of the individuals in the group, E., was a known gang member with prior law enforcement contacts and that there had been several comparatively recent incidents of criminal activity in the park, including acts of violence directed at police officers. But she conceded that neither E. nor any other person under the ramada matched the description of anybody wanted by the police.

¶6 "[R]easonable suspicion" is a "commonsense, non-technical concept[] that deal[s] with the "'factual and practical considerations of everyday life on which reasonable

4

and prudent men, not legal technicians, act.'"'" *Ornelas v. United States,* 517 U.S. 690, 695, 116 S. Ct. 1657, 1661, 134 L. Ed. 2d 911, 918 (1996), *quoting Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527, 544 (1983), *quoting Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879, 1890 (1949). But Pegnato simply provided no "particularized or objective basis" for believing that Ilono, or any other person in the group, had committed, or was about to commit, a crime. *See United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981) (requiring officers to possess a "particularized and objective basis" for suspecting person stopped of criminal activity). Indeed, Arizona courts have found that officers lacked reasonable cause for an investigative stop under far more suspicious circumstances. *See, e.g., Rogers*, 186 Ariz. at 511, 924 P.2d at 1030 (officers lacked sufficient basis for investigatory stop of defendant who had emerged from bushes in darkened residential area, stared at officers conducting a traffic stop while walking down middle of road, and began running when officers asked to speak with him); *State v. Stricklin*, 191 Ariz. 245, 246, 955 P.2d 1, 2 (App. 1996) (no reasonable suspicion for investigatory stop of defendant who had displayed furtive behavior near closed business at 1:00 a.m.). And we cannot authorize officers to conduct investigatory detentions of individuals merely because they have worn the wrong color clothing in the wrong part of town. *See Brown v. Texas*, 443 U.S. 47, 52, 99 S. Ct. 2637, 2641, 61 L. Ed. 2d 357, 362-63 (1979) (person's mere presence in alley in neighborhood frequented by drug users not reasonable cause for investigative stop).

¶7        However, the conclusion that the officers lacked a reasonable basis for an investigative stop does not end our inquiry. At the suppression hearing, Officer Pegnato implied, and the state maintained, that the officers' actions had not implicated the standards set forth in *Terry* and its progeny because the individuals under the ramada were never detained and were free to leave until the officers developed cause to arrest Ilono. And the record shows that the officers *initially* took no actions, and made no statements, that would have led Ilono to believe that he could not voluntarily depart.

¶8        "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or another public place.'" *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389, 398 (1991), *quoting Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229, 236 (1983). Further, officers may question citizens without implicating Fourth Amendment protections "so long as the officers do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 437, 111 S. Ct. at 2388, 115 L. Ed. 2d at 400. Under such circumstances, we would find no constitutional infirmity in the officers approaching Ilono to make an inquiry to the extent Ilono consented to it.

¶9        However, the officers' actions that led to the discovery of the inculpatory evidence involved a far greater intrusion on Ilono's liberty than mere voluntary questioning. In fact, the record suggests that Pegnato conducted a pat-down frisk of Ilono even before she asked a single question of him. In *Terry*, the Supreme Court implied that a pat-down search

6

of a defendant must be characterized as a search and seizure. 392 U.S. at 19, 88 S. Ct. at 1879, 20 L. Ed. 2d at 904-05 ("Officer McFadden 'seized' petitioner and subjected him to 'search' when he took hold of him and patted down the outer surfaces of his clothing."); *see also Sibron v. New York*, 392 U.S. 40, 64, 88 S. Ct. 1889, 1903, 20 L. Ed. 2d 917, 935 (1968) (police officers may not place their hands on citizens "in search of anything" without "constitutionally adequate, reasonable grounds for doing so"). Thus, "[a] pat down is unquestionably a search covered by the Fourth Amendment." *Leveto v. Lapina*, 258 F.3d 156, 163 (3d Cir. 2001).

¶10            Relying on *Terry,* the state argues the frisk was nonetheless proper because the officers had possessed "an articulable reason to fear for their safety." *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883, 20 L. Ed. 2d at 909 (officer may frisk person during brief detention only if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger"); *see also Adams*, 407 U.S. at 146, 92 S. Ct. at 1923, 32 L. Ed. 2d at 617 (officer may frisk person during *Terry* stop only if he or she "has reason to believe that the suspect is armed and dangerous"). The facts here arguably would have supported a reasonable belief that one or more of the individuals under the ramada might be armed and dangerous. The officers were aware that (1) E. was a gang member who had been known to carry a weapon; (2) gang members in general are known to carry weapons; and (3) unknown persons had recently shot at police officers in the neighborhood and had physically assaulted a police officer at a Boys and Girls Club

adjoining the park several days earlier. Moreover, Ilono was not only wearing gang colors and loose-fitting clothes within which a gun could be easily hidden from view, he was also associating with E.

¶11 Assuming, without deciding, that those circumstances gave the officers reasonable grounds to believe Ilono was then armed and dangerous, *but see Ybarra v. Illinois*, 444 U.S. 85, 94, 100 S. Ct. 338, 343, 62 L. Ed. 2d 238, 247 (1979) ("The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion *directed at the person to be frisked . . . .*") (emphasis added), *quoting Dunaway v. New York*, 442 U.S. 200, 210, 99 S. Ct. 2248, 2255, 60 L. Ed. 2d 824, 834 (1979), we nonetheless conclude that the officers were not entitled to conduct a protective search of him in the absence of any reason to believe that he had committed, or was committing, a crime. Notably, *Terry* and its Supreme Court progeny addressed the propriety of a pat-down search exclusively in the context of a lawful investigatory stop.[2] We do not read those cases to authorize a pat-down search as part of a mere consensual encounter—even when an officer may have grounds to believe the targets of the encounter are potentially armed and dangerous. In his concurring opinion in *Terry*, Justice Harlan bluntly rejected the theory that officers may conduct a pat-down search as part of a consensual encounter, noting:

---

[2]*See Terry*, 392 U.S. at 22-23, 88 S. Ct. at 1880-81, 20 L. Ed. 2d at 906-07; *see also Adams*, 407 U.S. at 147-48, 92 S. Ct. at 1924, 32 L. Ed. 2d at 617-18.

8

> [P]olicemen have no more right to "pat down" the outer clothing of passers-by, or persons to whom they address casual questions, than does any other citizen. . . .
>
> . . . .
>
> . . . [I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a *forcible* stop.

392 U.S. at 32, 88 S. Ct. at 1885, 20 L. Ed. 2d at 912 (Harlan, J., concurring); *see also* *Adams*, 407 U.S. at 146, 92 S. Ct. at 1923, 32 L. Ed. 2d at 617 ("So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.") (emphasis added).

¶12        Both Arizona jurisprudence and other persuasive authority suggest that an officer's right to conduct a pat-down search should be predicated on the officer's right to initiate an investigatory stop in the first instance. In *Stricklin*, a case in which we found inadequate grounds for an investigatory stop, we tersely concluded that, "[b]ecause the stop was not justified, neither was the pat-down search." 191 Ariz. at 246, 955 P.2d at 2. Other courts addressing the question more exhaustively have come to the same conclusion. In *United States v. Burton*, 228 F.3d 524, 528 (4th Cir. 2000), the Fourth Circuit articulated the test as follows:

> [A]n officer may encounter citizens and attempt to question them without implicating the Fourth Amendment. But during such police-citizen encounters, an officer is not entitled,

9

without additional justification, to conduct a protective search. To conduct such a protective search, an officer must first have reasonable suspicion supported by articulable facts that criminal activity may be afoot.

*See also United States v. Gray*, 213 F.3d 998, 1000 (8th Cir. 2000) (requiring that a frisk be based upon reasonable suspicion that criminal activity is afoot because "a protective frisk is both a search and a seizure for Fourth Amendment purposes"); *Gomez v. United States,* 597 A.2d 884, 890-91 (D.C. App. 1991) (officer's safety concerns should not be considered in determining articulable suspicion); *State v. Giltner*, 537 P.2d 14, 17 (Haw. 1975) (officer lacking cause for an investigatory stop not authorized to frisk defendant despite officer's knowledge that defendant had been armed on previous occasion); 4 Wayne R. LaFave, *Search and Seizure* § 9.6(a), at 617 (4th ed. 2004) ("[I]f an officer, lacking the quantum of suspicion required by *Terry* to make a forcible stop, instead conducts a non-seizure field interrogation, he may not frisk the person interrogated upon suspicion he is armed . . . .").

¶13        Moreover, the United States Supreme Court, our own supreme court, and this court have indicated that a person is authorized to disregard, or even flee from, an officer who merely seeks to initiate a consensual encounter. *Bostick*, 501 U.S. at 437, 111 S. Ct. at 2387, 115 L. Ed. 2d at 400; *Rogers*, 186 Ariz. at 510-11, 924 P.2d at 1029-30; *State v. Wyman*, 197 Ariz. 10, ¶ 12, 3 P.3d 392, 396 (App. 2000).  We would contradict the logic of those cases if we concluded that, under the same circumstances, an officer possesses the authority to require the target of the consensual inquiry to submit to a pat-down search.

10

¶14 We are cognizant of the need for officers to protect themselves as they engage in the vitally important and dangerous task of enforcing our laws, and we agree they must be given substantial leeway in determining whether a suspect may be armed and dangerous. *See State v. Vasquez*, 167 Ariz. 352, 354-55, 807 P.2d 520, 522-23 (1991) (in the context of an arrest or detention, officers should be given leeway in handling dangerous situations and "should not be compelled to act at their peril"). But, in the context of a consensual encounter initiated by an officer, those persons targeted by the officer, when not reasonably suspected of any criminal activity, also possess the right to be free of unwarranted government intrusion. As Justice Harlan observed in *Terry*:

> Any person, including a policeman, is at liberty to avoid a person he considers dangerous. If and when a policeman has a right instead to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence. That right must be more than the liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away; he certainly need not submit to a frisk for the questioner's protection.

392 U.S. at 32-33, 88 S. Ct. at 1885-86, 20 L. Ed. 2d at 912 (Harlan, J., concurring); *see also* LaFave, *supra*, § 9.6(a), at 617 (when an officer lacks grounds to temporarily detain a person he or she believes may be armed and dangerous, "the officer may protect himself by not engaging in a [consensual] confrontation"). "No matter how appealing the cart may be, the horse must precede it." *Gomez*, 597 A.2d at 891.

¶15　　　　Because the encounter between Ilono and the officers ceased to be consensual when Officer Pegnato conducted the pat-down search, and because the officers lacked any reasonable basis to suspect that Ilono had committed a crime so as to justify such an intrusion, the juvenile court erred in denying Ilono's motion to suppress the fruits of the pat-down search.  Accordingly, we reverse the adjudication of delinquency and remand the case for further proceedings consistent with this decision.

_____
PETER J. ECKERSTROM, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge