NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*

*v.*

PEDRO VALENZUELA, *Appellant*.

No. 1 CA-CR 13-0403
FILED 06-26-2014

Appeal from the Superior Court in Maricopa County
No. CR2012-119766-001
The Honorable William L. Brotherton Jr., Judge
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Charles R. Krull
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**B R O W N**, Judge:

¶1        Pedro Valenzuela appeals his convictions and sentences for two counts of misconduct involving weapons, one as a class 4 felony (prohibited possessor) and one as a class 1 misdemeanor (failure to report); possession or use of a dangerous drug, a class 4 felony; and possession of drug paraphernalia, a class 6 felony. He argues the trial court erred in denying his motion to suppress because police lacked reasonable suspicion to conduct a stop and frisk. For the following reasons, we affirm.

### BACKGROUND

¶2        The following evidence was presented at the evidentiary hearing. At about 3:50 p.m. on April 13, 2012, police were dispatched to an apartment complex based on an emergency call of "unknown trouble" involving persons with firearms near the pool area. Officers Olmos and Callison were within a quarter mile of the complex at the time of the call and quickly arrived at the location. The officers were wearing standard police uniforms with gun belts, patches, and badges.

¶3        When they arrived, they observed two males and two females near the pool area. As soon as Valenzuela saw the officers, he "immediately stood up" and walked toward the open arcadia door of an apartment. Olmos recognized Valenzuela as someone he had previously arrested. He also had personal knowledge of Valenzuela's criminal record, including felony convictions.

¶4        Based on the nature of the call and Valenzuela's reaction, Olmos told Valenzuela to stop and put his hands up. Valenzuela hesitated and then tried to reach down into one of his pockets. The officer repeated the command, at which time Valenzuela complied. Olmos directed Valenzuela to put his hands on top of his head and spread his feet when the officer noticed what appeared to be a trail of blood going into the apartment Valenzuela was approaching.

2

¶5 Olmos asked Valenzuela if he had any weapons or firearms, but Valenzuela did not respond. He repeated the question and Valenzuela remained silent. The officer then conducted a *Terry*[1] frisk for weapons and found a four-inch folding-type knife in Valenzuela's right front pants pocket. The officer also felt a "hard metal type object . . . that had the dimensions of a firearm" in the right side of Valenzuela's waistband. He lifted Valenzuela's shirt and saw the handle of a handgun. The other officer removed the gun and Valenzuela was placed under arrest for failing to declare a firearm to a law enforcement officer.[2] As Olmos conducted the search incident to arrest, he found three small baggies containing a crystal substance later determined to be methamphetamine.

¶6 Valenzuela filed a motion to suppress, arguing the search was unreasonable because the officers had not asked any questions or gathered any evidence that a crime had been committed. Following the evidentiary hearing, the trial court denied the motion, finding the State proved there was reasonable suspicion that Valenzuela "posed a danger to those on the arrest scene." The court concluded that both the stop and the search of Valenzuela were lawful.

¶7 Valenzuela was convicted on all counts and the court sentenced him to 4.5 years of imprisonment. This timely appeal followed.

## DISCUSSION

¶8 When reviewing a trial court's denial of a motion to suppress, we defer to the trial court's factual findings, but review the court's ultimate legal determination as to whether the totality of the

---

[1] *Terry v. Ohio*, 392 U.S. 1, 27 (1986).

[2] Arizona Revised Statutes ("A.R.S.") section 13-3102(A)(1)(b) reads:

> A person commits misconduct involving weapons by knowingly . . . [c]arrying a deadly weapon . . . concealed on his person or within his immediate control . . . [w]hen contacted by a law enforcement officer and failing to accurately answer the officer if the officer asks whether the person is carrying a concealed deadly weapon[.]

circumstances warranted an investigative detention, and whether its duration was reasonable, de novo. *State v. O'Meara*, 197 Ariz. 328, 329, ¶ 2, 4 P.3d 383, 384 (App. 1999). We look "only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling." *State v. Brown*, 233 Ariz. 153, 156, ¶ 4, 310 P.3d 29, 32 (App. 2013).

**¶9** The Fourth Amendment of the United States Constitution grants individuals the right to be protected against unreasonable searches and seizures. U.S. Const. amend. IV. These protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002), (citing *Terry*, 392 U.S. at 9 ). Valenzuela asserts his Fourth Amendment rights were violated because Olmos lacked reasonable suspicion to conduct an investigative stop or a weapons search. Although the trial court correctly determined there was reasonable suspicion to conduct a search, the court did not specifically address the pertinent legal standards for evaluating whether reasonable suspicion existed for the investigatory stop. As explained below, we conclude that Olmos' seizure of Valenzuela did not violate the Fourth Amendment. *See State v. Boteo-Flores*, 230 Ariz. 551, 553, ¶ 7, 288 P.3d 111, 113 (App. 2012) (noting a trial court's ruling may be affirmed if it is legally correct for any reason).

### A. Investigatory Stop

**¶10** The parties dispute whether a seizure occurred when Olmos gave the first command to Valenzuela to stop and put his hands in the air. It is undisputed, however, that Valenzuela was seized, for purposes of the Fourth Amendment, when he complied with Olmos' second command to stop and place his hands in the air. Regardless of the precise moment when the seizure occurred, it does not affect our analysis of whether the investigatory stop was justified.

**¶11** Police officers may stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity "may be afoot." *Illinos v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30). "[R]easonable suspicion is a commonsense, non-technical concept [ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *In re Ilono H.*, 210 Ariz. 473, 475, ¶ 6, 113 P.3d 696, 698 (App. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotations omitted)). The concept entails some minimal level of objective justification for making a stop—that is,

something more than "an inchoate and unparticularized suspicion or 'hunch,'" but less than the level of suspicion required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The test for the validity of a *Terry* stop is therefore objective; the court must ask whether "a reasonably prudent [person] in the circumstances would be warranted in the belief . . ." that criminal activity is occurring. *State v. Blackmore*, 186 Ariz. 630, 633, 925 P.2d 1347, 1350 (1996) (quoting *Terry*, 392 U.S. at 27). "In evaluating the reasonableness of a stop, the trial court must evaluate the totality of the circumstances" and even "seemingly small factual distinctions can affect a court's conclusions as to the reasonableness of a stop." *State v. Livingston*, 206 Ariz. 145, 148 n.1, ¶ 12, 75 P.3d 1103, 1106 n.1 (App. 2003).

¶12        An investigatory stop and a frisk for weapons are separate actions with distinct legal justifications. An officer may conduct an investigatory stop if he has reasonable suspicion that *criminal activity may be afoot*, *Sokolow*, 490 U.S. at 7, or if the person stopped is reasonably suspected of having committed a crime. *United States v. Hensley*, 469 U.S. 221, 229 (1985). An officer may perform a limited search for weapons if the officer has reason to believe the suspect *is armed and dangerous*. *Adams v. Williams*, 407 U.S. 143, 146 (1972); *In re Ilono H.*, 210 Ariz. at 474-75, ¶ 4, 113 P.3d at 697-98. Therefore, we turn first to the question of whether an officer, standing in the shoes of Olmos, would have had reasonable suspicion that criminal activity was occuring.

¶13        The officers arrived at the apartment building based on an emergency call indicating "unknown trouble" was occurring by people with firearms near the pool area. Upon arrival, there were four people in the pool area, one of which was Valenzuela. Valenzuela immediately stood up to leave upon noticing the officers. *See Wardlow*, 528 U.S. at 124 (holding that "flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Officer Olmos had personal knowledge that Valenzuela was a convicted felon, which, when considered with the report that people had firearms, provided reasonable suspicion to believe that Valenzuela had committed misconduct involving weapons. *See* A.R.S. § 13-3102(A)(4) (prohibiting possession of a weapon by a person whose civil right to carry a gun has not been restored); *see also United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010) ("Although a person with a criminal record could not be pulled over or detained based on the record itself, such a record is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior."); *United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008) (upholding the lower

court's finding that law enforcement had reasonable suspicion to perform an investigative stop of a defendant based, in part, on the fact that "the detective knew that [the defendant] had previously sold crack cocaine"); *c.f. Kenion v. U.S.*, 302 A.2d 723, 725 (D.C. 1973) (holding that the investigatory stop was inappropriate because it was based solely on law enforcement's knowledge of a defendant's prior conviction).

¶14        Accordingly, there were sufficiently objective and articulable facts to support a reasonable suspicion that criminal activity was going on; thus, the investigatory stop did not violate the Fourth Amendment. *See Adams*, 407 U.S. at 146 ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.").

### B.        Search For Weapons

¶15        An officer may perform a reasonable search for weapons if he has an articulable, reasonable suspicion, based on the totality of the circumstances, that an individual is presently armed and dangerous, regardless of probable cause to arrest. *Terry*, 392 U.S. at 30 (When "the persons with whom [the officer] is dealing may be armed and presently dangerous . . . he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."). The totality of the circumstances approach allows officers to draw on their own experience and training to make inferences about the cumulative information available to them that "might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (quoting *U.S. v. Cortez*, 449 U.S. 411, 418 (1981)). As such, we give deference and leeway to an officer trained to recognize signs of criminal activity. *Avizu*, 534 U.S. at 273; *see also Ilono H.*, 210 Ariz. at 477, ¶ 14, 113 P.3d at 700. Finally, as previously discussed, because the test is an objective standard, we look to whether "a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Blackmore*, 186 Ariz. at 633, 925 P.2d at 1350.

¶16        Here, Valenzuela was told to put his hands on top of his head, interlace his fingers, and spread his feet so the officer could conduct a protective search. Initially Valenzuela did not comply and began to put his hand into one of his pockets, requiring the officer to issue a second set of commands. At that time, the officer noticed blood on the ground leading into the apartment Valenzuela was attempting to enter. Olmos

asked Valenzuela twice if he had a weapon on his person, but Valenzuela did not respond either time. He informed Valenzuela at that point he was not under arrest, and began a protective search outside of Valenzuela's clothes. Based on these circumstances, Olmos had reasonable suspicion to believe that Valenzuela was armed and dangerous. Thus, the limited search for weapons did not violate the Fourth Amendment.

## CONCLUSION

¶17        Because we conclude that the evidence presented at the evidentiary hearing supports the trial court's denial of Valenzuela's motion to suppress, we affirm his convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh