NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

AMETHYST RIBBLE, *Appellant.*

No. 1 CA-CR 16-0726
FILED 11-14-2017

Appeal from the Superior Court in Maricopa County
No.  CR2015-105193-001 SE
The Honorable Virginia L. Richter, Judge *Pro Tem*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender, Phoenix
By Lawrence Blieden
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Paul J. McMurdie and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

**¶1**   Amethyst Starr Ribble appeals her conviction and probation grant for possession of dangerous drugs. On appeal, she challenges the denial of her motion to suppress. Discerning no error, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**   In August 2014, Officer Marchant, an officer with Tempe Police Department, initiated a traffic stop of a vehicle driven by Ribble after observing a traffic violation. During the stop, Officer Marchant noticed Ribble moving around inside the vehicle and was "first leaning forward and then kind of shifting in her seat. And then her right arm went behind her back." This behavior "sparked [his] suspicions" that there may have been a weapon or contraband inside the vehicle. After completing a records-check on Ribble and the vehicle, Officer Marchant approached the vehicle to speak with her and the passenger. Ribble explained she had been moving around in the vehicle because she was looking for her keys so Officer Marchant would not think the vehicle was stolen. She further explained that her "ignition was messed up" and "she didn't have any keys in the ignition" because "the key broke off inside of it." Officer Marchant then requested additional police assistance because he had decided he "was going to ask them to exit the vehicle in order to perform a consensual search or a canine sniff." While waiting for assistance, Officer Marchant observed

---

[1]  The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

[2]  We review the facts in the light most favorable to sustaining the trial court's ruling, *State v. Hyde*, 186 Ariz. 252, 265 (1996), and give deference to the trial court's factual findings. *State v. Adams*, 197 Ariz. 569, 572, ¶ 16 (App. 2000).

additional movements including Ribble "picking something up, [and] moving it."

¶3        When a second officer arrived, Officer Marchant approached the vehicle for a third time.  During this interaction, Officer Marchant noticed Ribble had her purse on her lap and "a multi-tool with the pliers portion unfolded on one side and a knife unfolded on the other side."  He also noticed Ribble had a fresh cut on her thumb.  Ribble explained that she had the tool out because she wanted to make sure she could start her vehicle.

¶4        Officer Marchant believed the interactions were suspicious because her stories were inconsistent—at one point she explained she used pliers to start the car, and at a later point she said she used the knife to start the car.  The officers removed Ribble and the passenger from the vehicle for "further investigation."  Officer Marchant sought consent to search the vehicle, but Ribble declined.  The officers then requested an "available canine,"  and a canine unit arrived approximately 20 minutes later.

¶5        The narcotics dog, Indy, alerted to the outside of the driver's-side door, but he did not alert when allowed inside the vehicle. Indy and his handler, Officer Blank, are certified by the National Police Canine Association in narcotic detection.  Based on the initial alert, the officers searched the car and retrieved a black bag containing methamphetamine hidden between the bottom and back cushions of the driver's seat along with several other items that appeared to be drug paraphernalia.

¶6        The State, by amended Information, charged Ribble with one count of possession or use of dangerous drugs, a class four felony, and one count of possession of drug paraphernalia, a class six felony.

¶7        Ribble filed a motion to suppress the evidence seized in the warrantless search of her vehicle.  After conducting an evidentiary hearing, the superior court denied the motion, finding the State established by a preponderance of the evidence (1) the stop was reasonable, (2) the extension of the stop was reasonable based on suspected criminal activity, and (3) any concerns as to the reliability of the dog sniff was for the jury to consider and weigh.

¶8        The jury convicted Ribble of possession of dangerous drugs and acquitted her of possession of drug paraphernalia.  The superior court suspended her sentence and imposed a two-year probation term.  Ribble

filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21.A.1., 13-4031, and 13-4033A.[3]

## DISCUSSION

**¶9**        Ribble argues the superior court abused its discretion in denying her motion to suppress evidence seized in the warrantless search of her vehicle because: (1) there was no reasonable suspicion for the traffic stop; (2) there was no reasonable suspicion to prolong the traffic stop; and (3) there was no probable cause to search the vehicle because the dog alert was unreliable. We review evidentiary rulings that implicate a defendant's constitutional rights de novo, *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006), considering only the evidence submitted at the suppression hearing. *State v. Blackmore*, 186 Ariz. 630, 631 (1996).

**¶10**        Reasonable suspicion requires an objective, articulable basis justifying an investigatory detention. *State v. Primous*, 242 Ariz. 221, 223, ¶ 11 (2017); *State v. Sweeney*, 224 Ariz. 107, 112, ¶ 21 (App. 2010); *State v. Teagle*, 217 Ariz. 17, 23, ¶ 25 (App. 2007). Existence of reasonable suspicion is assessed in light of the totality of the circumstances, taking into account the officer's training and experience, and considering collectively all criteria, even those that in isolation might have innocent explanations. *Sweeney*, 224 Ariz. at 112–13, ¶ 22; *State v. Fornof*, 218 Ariz. 74, 76, ¶ 6 (App. 2008). "In reviewing the totality of the circumstances, we accord deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious actions." *Teagle*, 217 Ariz. at 24, ¶ 26 (citing *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002)).

**¶11**        Article 2, Section 8, of the Arizona Constitution, and the Fourth Amendment provide protection from unreasonable searches and seizures. U.S. Const. amend. IV; *see State v. Gilstrap*, 235 Ariz. 296, 297, ¶ 7 (2014). "An investigatory stop of a motor vehicle constitutes a seizure," but an officer "need only possess a reasonable suspicion that the driver has committed an offense" to conduct a traffic stop. *State v. Livingston*, 206 Ariz. 145, 147, ¶ 9 (App. 2003).

**¶12**        Ribble acknowledges that she failed to signal before making a right turn, but contends she did not violate A.R.S. § 28-754 because the State failed to prove that other traffic may have been affected by the unsignaled movement. To effectuate a legal traffic stop, Officer Marchant

---

[3]        Absent a change material to our decision, we cite to a statute's most current version.

needed an articulable, reasonable suspicion that Ribble turned her vehicle without giving an appropriate signal where "other traffic may [have been] affected by the movement." A.R.S. § 28-754.A. A police officer driving a police vehicle can constitute "other traffic." *State v. Salcido*, 238 Ariz. 461, 465, ¶ 13 (App. 2015).

¶13 Here, Officer Marchant testified that as he was driving "within several car lengths" behind Ribble, he observed her stop at a stop sign, and then turn right without signaling. His observation from within his police vehicle, observed while he was driving on the same roadway, may have affected his driving. *See* A.R.S. § 28–754; *Salcido*, 238 Ariz. at 466, ¶ 14 (holding "[t]he traffic maneuver need not actually affect other traffic, 'it is enough that the move may influence the factors a driver would consider in order to drive safely'"). The superior court did not err in finding sufficient reasonable suspicion to justify the traffic stop.

¶14 Ribble next argues that Officer Marchant lacked reasonable suspicion to prolong the traffic stop in order to conduct a dog sniff. Stopping a car based upon a police-observed traffic violation "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). After an officer completes the traffic-related purpose of the stop, the driver must be allowed to leave unless the encounter becomes consensual or "during the encounter, the officer develops a reasonable and articulable suspicion that criminal activity is afoot." *Sweeney*, 224 Ariz. at 112, ¶ 17 (citing *Teagle*, 217 Ariz. at 23, ¶ 22). The use of a dog sniff after a routine traffic stop requires reasonable suspicion independent of that justifying the initial seizure. *Rodriguez v. United States*, 135 S.Ct. 1609, 1616 (2015).

¶15 Here, Officer Marchant developed a reasonable suspicion that Ribble was in possession of and attempting to conceal contraband. While reviewing her license and registration, Officer Marchant observed her lean forward from her seat and then move her right arm behind her back. He explained that these movements "sparked" his suspicion that "something inside the vehicle was being moved, whether it be a weapon or contraband." After speaking to Ribble about the movements he observed, he continued to suspect that "she could have been moving something, something of contraband inside the vehicle" because her explanation for the movement—that she wanted to find her keys to prove that the car was not stolen—was inconsistent with providing the vehicle's registration, which proved she was the registered owner. Officer Marchant's suspicions heightened when he went back to his patrol vehicle and saw "more shifting

in the seat like, you know, picking something up, moving it." He described these observed movements as "furtive."

**¶16**    When he returned to the vehicle again, this time with an additional officer, he observed Ribble holding "a multi-tool with the pliers portion unfolded on one side and a knife unfolded on the other side." In addition, he observed a fresh cut on her thumb. Officer Marchant noted that although Ribble claimed that she had drawn the knife to start her car, she had previously stated that she used the pliers function of the multi-tool device to do so. This additional inconsistency in Ribble's story caused Marchant to call for a canine unit.

**¶17**    On this record, examining the totality of Officer Marchant's encounter with Ribble, we discern no error in the superior court's finding that there was reasonable suspicion to detain her until the narcotic dog arrived. Although Ribble claims her explanation for her actions were "entirely plausible," "seemingly innocent behavior can form the basis for reasonable suspicion if an officer, based on training and experience, can perceive and articulate meaning in given conduct, which would be wholly innocent to the untrained observer." *State v. Boteo-Flores*, 230 Ariz. 105, 108, ¶ 12 (2012) (internal quotation marks and alteration omitted). Further, "when determining whether reasonable suspicion exists, the police are not required to rule out the possibility of innocent explanations for a defendant's conduct." *State v. Evans*, 237 Ariz. 231, 235, ¶ 16 (2015). Because Officer Marchant testified that based on his training and experience as a police officer and as a "narcotics enforcement liaison," Ribble's continuous furtive movements and her inconsistent story led him to suspect she was concealing contraband, there was sufficient reasonable suspicion of criminal activity to justify extending the detention in order to confirm or dispel such suspicion. *See id.* at ¶ 14.

**¶18**    Finally, Ribble argues there was no probable cause to search her vehicle because the canine's alert was unreliable. Ribble does not contest the legitimacy of Indy's training or the presumption of reliability that it creates, but instead claims that Indy was not reliable the night he sniffed her car because he was sick.

**¶19**    An alert by a properly trained and reliable drug detection dog can provide probable cause for a warrantless search of a vehicle. *See Teagle*, 217 Ariz. at 27 n.7, ¶ 36. In determining the reliability of a dog's alert to contraband, the inquiry "is whether all the facts surrounding the alert, viewed through the lens of common sense, would make a reasonably

prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013).

**¶20** Officer Blank, Indy's handler, testified that Indy is trained to detect the presence of a narcotic odor and not necessarily the drug's precise location within a vehicle. On the night of Ribble's stop, Officer Blank had not "recognize[d] any issues with Indy." He did, however, notice symptoms of a respiratory issue, including excessive sneezing, the day after the stop during their routine training session. Officer Blank noted that during the training session, it took Indy a little longer to alert and he "seemed to be having a hard time locating the source odor." Officer Blank further testified that the difficulty Indy demonstrated during his training the next day caused him to *miss* the presence of a narcotic odor, not to falsely identify an odor. Officer Blank's testimony regarding Indy's training and his behavior while suffering a respiratory illness, indicates that Indy's failure to alert while inside the car was not proof that his alert on the outside of the car was unreliable.

**¶21** On this record, the superior court properly considered whether Indy may have been sick at the time of the sniff, and weighed that information alongside Officer Blank's testimony before concluding the dog sniff provided probable cause for the warrantless search.

## CONCLUSION

**¶22** For the foregoing reasons, the superior court properly denied Ribble's motion to suppress and we affirm Ribble's conviction and sentence.

